IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Criminal Action No. 08-05-SLR |
| TERRENCE ROSS | ) |
| aka "Turkman" | ) |
| Defendant. | ) |

**GOVERNMENT RESPONSE IN OPPOSITION TO MOTION TO DISCLOSE
INFORMATION REGARDING CONFIDENTIAL INFORMANT**

NOW COMES the United States of America, by and through its undersigned attorneys, and hereby responds to Defendant's Motion to Disclose Information Regarding Confidential Informant and respectfully requests that this Court deny the defendant's motion.

**Factual Background**

On January 10, 2008, the grand jury for the District of Delaware returned a four-count indictment charging the defendant with possession with intent to distribute over fifty grams of crack cocaine, in violation of 21 U.S.C. § 821(a)(1) and (b)(1)(A); possession with intent to distribute cocaine, in violation of 21 U.S.C. § 821(a)(1) and (b)(1)(C); possession of a firearm in furtherance of drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).

Approximately 65 grams of crack cocaine, 205 grams of cocaine powder, and a firearm were discovered on October 12, 2007, during a search warrant conducted at the defendant's residence at 21909 Mill Park Drive, Bridgeville, Delaware. The search warrant and affidavit of probable cause are attached as "Attachment A."

In the affidavit in support of the search warrant for the defendant's residence, affiant Detective Skinner of the Delaware State Police stated that he had contact with a confidential

informant ("CI-1") who informed him that an individual named "Turkman," was selling drugs at 21909 Mill Park Drive. According to the affidavit, law enforcement knew that the defendant, Terrence Ross, is known by the nickname, "Turkman." In addition, the affidavit indicates that Detective Shawn Wright of the Drug Task Force of the Delaware State Police, had contact with another confidential informant ("CI-2"), who also confirmed that "Turkman" was selling large quantities of cocaine from his residence. During the second two weeks of September, 2007, and the first two weeks of October, 2007, the affidavit states that CI-1 made two controlled purchases of cocaine from inside the defendant's residence.

## Argument

The defendant seeks disclosure of the confidential informants' identity, as well as other information about the confidential informant such as amounts paid or benefits provided to the informant, and the informants' prior drug use, or criminal history, and prior testimony. The Government respectfully submits that such disclosure is unwarranted in this case.

Courts have long recognized that effective law enforcement and the protection of the public interest require that the government be permitted, absent exigent circumstances, to withhold the identity of informants. *See Roviaro v. United States*, 353 U.S. 53 (1957). The government's privilege will give way only if the defense can make an adequate showing that disclosure is "relevant and helpful to the defense of an accused" or "essential to a fair determination of a cause." *Roviaro,* 353 U.S. at 60-61. The burden is on the defendant to show the need for the disclosure of confidential informant information. *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981). In *Jiles*, the Third Circuit required the defendant to first "set[] forth a *specific* need for disclosure" that shows the confidential informant information "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a case" before finding that "the privilege must give way." 658

F.2d at 196 (emphasis added). Once the defendant has made a particularized showing that the informant's identity would significantly aid the defendant in establishing a specific asserted defense, the court will then balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62.

As a threshold matter, the defendant's motion fails to articulate a specific need for the disclosure of the informants' identity, as required by *Jiles*. At this juncture, the charges against the defendant stem solely from the illegal drugs, the firearm, and other evidence seized from the defendant's house during the execution of a search warrant, and the defendant has not been charged with any transactions directly involving a confidential informant. The defendant has not sought to suppress physical evidence discovered during the search, and it is therefore unclear how the identity of such informants would assist the defense under the circumstances.

Courts, moreover, have consistently declined to require disclosure of an informant's identity where, as here, the "the informant's role . . . was nothing more than that of allegedly providing the police with probable cause for conducting their search," and the "evidence of [the defendant's] guilt consisted primarily of the physical evidence seized during the search." *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983). Numerous cases have held against disclosure of informant identity on facts similar to those presented here, *i.e.*, where the informant was the sole participant in a controlled purchase of illegal drugs, the controlled purchase formed the basis of a search warrant, and evidence seized pursuant to the search led to criminal charges against the defendant. *See, e.g.*, *United States v. Tzannos*, 460 F.3d 128, 140-41 (1st Cir. 2006); *United States v. Wright*, 145 F.3d 972, 975-76 (8th Cir. 1998); *United States v. Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994). Thus, the Third Circuit has squarely held, "[w]here an informant's role was in validating a search, disclosure

of his identity is not required." *Bazzano*, 712 F.2d at 839 (citing *McCray v. Illinois*, 386 U.S. 300 (1967)).[1]

Given that the informants' role was limited to providing information that supported the police officers' affidavit of probable cause, the defendant has failed to meet the threshold requirement of *Jiles*, and at any rate, the defendant's interest in discovering the informants' identity is outweighed by the public's privilege not to disclose such information.

**Wherefore**, the United States of America respectfully requests that the Court enter an order denying the defendant's motion for disclosure of information regarding the confidential informants.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: _____
Ilana H. Eisenstein
Assistant United States Attorney

Dated: April 14, 2008

---

[1] The defendant has not raised a claim that the affiants made untrue statements in the search warrant affidavit, or claimed that the identity of the confidential informant would assist him in making a preliminary showing required for hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). But even if the defendant sought a *Franks* hearing, that alone would not generally justify disclosure of the confidential informant. *See United States v. Brown*, 3 F.3d 673, 677 (3d Cir. 1993) (stating that "*if* revelation of the identity of an informant is ever required in the context of a motion for a *Franks* hearing, it would only be *after* the defendant made a substantial preliminary showing of the affiant's reckless or intentional disregard for the truth. (emphasis original)).

# ATTACHMENT A

**IN THE MATTER OF:**

| | |
|---|---|
| Terrence W. Ross BMN37 Dob:08/06/1970 SBI# 00255138<br>White single wide mobile home with blue trim<br>located on Mill Park Dr Bridgeville, DE 19933 | { **SEARCH WARRANT**<br>{ SS:<br>{ **APPLICATION & AFFIDAVIT** |

STATE OF DELAWARE         DATE OF APPLICATION     COMPLAINT NO:
COUNTY OF Sussex          October 11, 2007         05-07-300344

Be it remembered that on this 11th day of October, A.D. 2007, before me
(Authority) _Sean Coffelt, Justice of The Peace,_
_J. P. Court No. 3_
NAME (S) OF AFFIANT (S)
Detective Lance Skinner 358          OF    the Delaware State Police
Detective Kristopher Thompson 386    OF    the Delaware State Police

personally appeared and being duly sworn (affirmed) according to law, depose (s) and say (s) that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure and is located at particular premises or places or in the possession of particular person(s) as described below.

ITEMS TO BE SEARCHED FOR AND SEIZED:
See addendum pages for items to be searched and seized.


SPECIFIC DESCRIPTION OF PREMISES AND / OR PLACE(S) AND / OR VEHICLES (S) AND / OR PERSON (S) TO BE SEARCHED:
-The residence is described as a white single mobile home with royal blue trim. There is a white entrance door on the front of the residence facing Mill Park Dr.
-The residence is located E/O the second curve on the Southern portion of Mill Park Dr. Mill Park Dr is large loop with two entrances W/O Coverdale Rd and N/O Hastings Farm Rd.
-There is a dirt driveway located on the Eastern side of the residence. There is a large tree located adjacent to the driveway, (See attached photograph of the residence for further details)
-Any and all vehicle(s) located on the property at the time of execution of the search warrant.
- Any and all outbuilding(s) located on the property.
-Any safe(s) located within the residence, vehicle, outbuilding, or property.
-Any and all subjects located on the property at the time of the search warrant is executed.


NAME OF OWNER (S), OCCUPANT (S) OR POSSESSOR (S) OF PREMISES AND / OR PLACE (S) AND / OR VEHICLE (S) AND/OR PERSON (S) TO BE SEARCHED:
- Terrence W. Ross BMN37 Dob:08/06/1970 SBI# 00255138
- Any other subject located on the property during the execution of the search warrant

VIOLATION OF (Describe Conduct or Specify Statute)
PWITD Cocaine 16-475-000a Class C Felony
Maintaining a Dwelling 16-4755-0055 Class F Felony

**IN THE MATTER OF:**

| | |
|---|---|
| Terrance W. Ross BMN37 Dob:08/06/1970 SBI# 00255138<br>White single wide mobile home with blue trim<br>located on Mill Park Dr Bridgeville, DE 19933 | { <br>{ **SEARCH WARRANT**<br>{<br>{ **SS:**<br>{ |

STATE OF DELAWARE             DATE OF APPLICATION      COMPLAINT NO:
COUNTY OF: Sussex             October 11, 2007         05-07-300344

THE STATE OF DELAWARE TO:

Detective Lance Skinner 358           OF the Delaware State Police
Detective Kristopher Thompson 386     OF the Delaware State Police

with the assistance of any police officer or constable or any other necessary or proper person or persons or assistance.

GREETINGS:

Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied that there is probable cause to believe that certain property, namely:

ITEMS TO BE SEARCHED FOR AND SEIZED:
See addendum pages for items to be searched and seized.

used or intended to be used for: the illegal sale, distribution, or possession of illegal drugs

is being concealed on the (premises) (person) described in the annexed affidavit and application or complaint;

NOW THEREFORE, YOU ARE HEREBY COMMANDED within ten (10) days of the date hereof to search the above-named person, persons, house, conveyance or place for the property specified in the annexed affidavit and application and to search any occupant or occupants found in the house, place, or conveyance above named for such property, serving this warrant and making the search in the daytime, or in the nighttime if the property to be searched is not a dwelling house, and, if the property, papers, articles or things, or any part thereof, be found there, to seize it, giving to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken, or leaving the copy and receipt at the place from which the property was taken and to prepare a signed inventory of the goods seized in the presence of the person from whose possession or premises the property was taken, if they are present, or, if they are not present, in the presence of at least one witness, and to return this warrant, accompanied by the written inventory, to me forthwith.

DATE the 11th day of October, A.D. 2007



(Judge or Justice of Peace)
Designate name, title and
J.P. Court No.



Your Affiant #1, Detective Lance Skinner, has been employed as a Trooper by the Delaware State Police since July 2001, and has been assigned to the Drug Task Force since January 2007. Affiants Skinner was assigned to the Governors Task Force from August 2003 until January 2007. Prior to the Delaware State Police, Affiant #1 Skinner was employed with the City of Dover Police Department in 2001. Affiant #1 Skinner was also employed with the Selbyville Police Department from October 1998 to March 2001. Affiant #1 Skinner holds an Associates Degree in Criminal Justice from Delaware Technical and Community College. Affiant #1 Skinner has attended State and Federal Courses sponsored by the U.S. Department of Justice Drug Enforcement Administration, along with other courses of instruction relating to the identification, manufacturing, distribution, detection and abuse of controlled substances.

Affiant #2 is Detective Kristopher Thompson of the Delaware State Police Drug Task Force. Affiant Thompson holds a Bachelor's Degree from Shippensburg University in Pennsylvania and attended the Delaware State Police Academy in 2001. Detective Thompson has been employed by the Delaware State Police since July 17, 2001 and assigned to Troop 4 after completing the academy and field training. During my employment with the Delaware State Police I have completed numerous state and federal courses in the area of narcotic and non-narcotic controlled substance identification, abuse, manufacturing and distribution. Affiant Thompson has conducted and assisted in numerous drug investigations in the seven years with the Delaware State Police. Affiant Thompson has authored numerous search warrants in the past and assisted with the execution of numerous other search and seizure warrants.

During the second two weeks of September 2007, Affiant Skinner was contacted by a cooperating individual hereafter referred as (CI-1). CI-1 advised that he/she knows a subject by the nickname of "Turkman" who is selling large quantities of crack cocaine from a residence on Mill Park Drive. CI-1 advised that "Turkman" is a black male who is approximately 6'00 and 200 pounds. CI-1 also stated that "Turkman" lives in a white trailer with blue trim located on the backside of Mill Park Drive when entering from the south. CI-1 stated that he/she could purchase crack cocaine from "Turkman" at his residence.

Members of the Drug Task Force are familiar with "Turkman" as being Terrence Ross DOB 08-06-1970. During the second two weeks of September 2007, Affiant Skinner conducted a Deljis rap sheet inquiry on Terrence Ross DOB 08-06-1970. Affiant Skinner observed that the listed address on Ross is 21909 Mill Park Drive Bridgeville, DE 19933. Affiant Skinner also observed the following convictions:
- November 19, 1997- Resisting Arrest- Kent County Court of Common Pleas
- February 23, 1994- Disorderly Conduct- Justice of the Peace Court #4
- September 13, 1993- Possession of a Narcotic Schedule II Control Substance- Sussex County Superior Court
- November 9, 1990- Assault Second Degree- Sussex County Superior Court

During the second two weeks of September 2007, Detective Shawn Wright of the Drug Task Force was contacted by a past proven reliable cooperating individual hereafter referred to as (CI-2). CI-2 advised that he/she knows a subject by the nickname "Turkman" who is selling large amounts of cocaine from a residence on the backside of Coverdale Crossroads.

During the second two weeks of September 2007, Affiant Skinner was contacted by CI-1 who advised that he/she could purchase crack cocaine from "Turkman" at his residence on Mill Park Drive. Affiant Skinner met with CI-1 and showed CI-1 a photograph of Terrence Ross DOB 08-06-1970. CI-1 confirmed that this is the subject that he/she knows as "Turkman". CI-1 then showed Affiant Skinner the residence that Ross is selling crack cocaine from. Affiant Skinner observed that the residence is a single wide white trailer with blue trim located on the backside of Mill Park Drive which is on the south west corner. Affiant Skinner was unable to observe a house number on this residence. Affiant Skinner then conducted a controlled purchase for crack cocaine using CI-1. During this purchase, Affiant Skinner observed Terrence Ross in the front yard of the residence at which time he then walked into the front door of the trailer. CI-1 was observed walking into the residence behind Ross. CI-1 then exited the residence and came back to Affiant Skinner. CI-1 then handed Affiant Skinner the suspected crack cocaine which was secured. Affiant Skinner field-tested the crack cocaine using a #13 COBALT-THIOCYANATE REAGENT Cocaine-Crack test kit and a positive reaction was obtained. See details of a controlled buy in addendum, which were followed during this purchase.

During the first two week of October 2007, Affiant Skinner was contacted by CI-1 who advised that Ross was at his residence cooking several ounces of cocaine. CI-1 advised that Ross is still selling large amounts of crack cocaine from the residence.

During the first two weeks of October 2007, Affiant Skinner was contacted by CI-1 who advised that he/she could purchase crack cocaine from Ross at his residence. Affiant Skinner then met with CI-1 and conducted a controlled purchase of crack cocaine. During this purchase, Affiant Skinner observed CI-1 enter the residence through the front door and then exited a short time later. CI-1 then handed Affiant Skinner the suspected crack cocaine which was secured. Affiant Skinner field-tested the crack cocaine using a #13 COBALT-THIOCYANATE REAGENT Cocaine-Crack test kit and a positive reaction was obtained. See details of a controlled buy in addendum, which were followed during this purchase.

During the first two weeks of October 2007, Affiant Thompson conducted a Sussex County Map inquiry of Mill Park Drive in Coverdale Crossroads. Affiant Thompson and Affiant Skinner observed that the listed lot numbers in this area appeared to not be in order and some residences even appeared to no longer be there. Affiant Thompson and Affiant Skinner were not able to confirm that actual house number of the residence where these controlled purchases have been conducted. Affiant Skinner then responded to Mill Park Drive and photographed the residence described in this search warrant so that it could be attached.

During the first two weeks of October 2007, Affiant Skinner contacted CI-1. CI-1 advised that Ross resides with his girlfriend, who operates a red Toyota Matrix. Surveillance was conducted on the residence on October 11, 2007 where a red in color Toyota Matrix was observed in the driveway.

On October 11, 2007, Affiant Skinner conducted a Cjis inquiry on Terrence Ross DOB 08-06-1970 and revealed that he is currently wanted out of Sussex County Family Court for Failure to Appear on Child Support.

Based upon your affiants training, experience and participation in past drug investigations, your affiants know;
   A. That drug traffickers very often place their assets in names other than their own to avoid detection of these assets by government agencies and even though these assets are in the names of others, the drug trafficker actually owns and continues to use these assets and exercise dominion and control over them;

   B. That drug traffickers must maintain large amounts of United States currency in order to maintain and finance their on going narcotic business;
   C. That drug traffickers maintain books, ledgers, records, receipts, notes, money orders and other papers relating to the transportation, ordering, purchasing and distribution of drugs;
   D. That it is common for drug traffickers to secrete contraband proceeds of drug sales and records of transactions in secure locations within their residence and/or their business for their ready access and to conceal their existence from law enforcement officers.
   E. That when drug traffickers amass large proceeds from the sale of drugs the traffickers attempt to legitimatize these profits. To do so, the drug traffickers often utilize domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, real estate and business fronts;
   F. That drug traffickers commonly maintain addresses or telephone numbers in books of paper, which reflect names, addresses and/or phone numbers of their associates in the drug trafficking organization;
   G. That drug traffickers often take payment in the form of stolen items such as televisions, stereos, VCR's, guns and cameras and/or that they obtain these items legitimately with the profits of drug sales. These items, found in quantities of more than two, which is not common for a residence, are evidence of a drug dealers profits;
   H. Your affiants are aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.
   I. Your affiants can state that the drug trafficker will generally only transport that amount of drug needed to complete a specific transaction. The drug trafficker will maintain the balance of the supply at a secure location, usually at their residence.

12. Based upon the information contained herein, Your Affiants believe that there is probable cause to believe that cocaine exists at the residence on Mill Park Drive Bridgeville, DE 19933 which has been described in this search warrant. Furthermore, Your Affiants believe that monies, drug records, financial records, and other evidence relating to the distribution and/or use of controlled substances can be found in the property, vehicles and outbuildings.

Addendum - 1
05-07-300344

**Property to be seized:**

1. Any cocaine or "crack" cocaine as defined by Delaware law, title 16, section 4716(b)(4).

2. Any related drug paraphernalia as defined by Delaware law, title 16, section 4701(16). Drug paraphernalia shall include materials of any kind which are used, intended for use or designed for use, in manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, re-packaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body, a controlled substance as classified under Delaware law.

3. Indicia of occupancy or residency of the described residence including but not limited to utility and electric bills, cancelled envelopes, and keys.

4. Books, records, receipts, notes, ledgers and other papers relating to transporting, ordering, purchasing or distributing crack cocaine or its by-products including addresses and telephone numbers of individuals associated in the drug trafficking operation.

5. Any documents, receipts, tickets or other papers reflecting or evidencing travel by any means in furtherance of the drug trafficking enterprise between Delaware and other states.

6. Books, records, receipts, bank statements and records, money drafts, letters of credit, cashier's check receipts, passbooks, bank checks, safety deposit keys, loan documents, wire transfers and other papers or documents evidencing the obtaining, secreting, transferring, laundering and investing and/or concealing of any assets or monies obtained directly or indirectly from violations of the controlled substance laws.

7. Any United States currency in close proximity to any cocaine or "crack" cocaine or paraphernalia, or any quantities of currency in excess of $500.00, or other property such as VCRS, televisions, cameras and stereos of estimated value of more than $100.00 found in quantities not normally associated with residences.

8. Any firearm or deadly weapon in close proximity to cocaine, "crack" cocaine or any other controlled substance as defined in the controlled substance act.

*[signature]*

**The following paragraphs detail-controlled purchases of illegal substances by a cooperating individual with an undercover officer.**

Elements of a controlled purchase: a controlled purchase is made using the following procedures:

1. Surveillance is initiated on the cooperating individual, and a thorough briefing is presented to surveillance officers.

2. A search is conducted on the cooperating individual and / or their vehicle for contraband and/or currency, prior to sending them to make the controlled purchase.

3. The cooperating individual is given official funds and the serial numbers of the currency are recorded.

4. Briefing the cooperating individual as to what to do and say during the transaction and where to meet following the transaction.

5. Advising surveillance officers of the cooperating individual's appearance.

6. Arranging to pick up or meet the cooperating individual following the transaction.

7. Searching the individual and /or their vehicle after the transaction for contraband, money and/or drugs and securing the evidence.

8. Taking a statement from the cooperating individual about the transaction, with emphasis on details occurring while the investigating officer was out of sight and/or hearing.

WHEREFORE, this (these) affiant (s) prays (or pray) that a search warrant may be issued authorizing a search of the aforesaid (house, place, conveyance, person or persons, or occupant or occupants) in the manner provided by law.

_____
Affiant

_____
Affiant

Sworn to (or affirmed) and subscribed before me this 11th day of October, A.D. 2007

_____
(Judge or Justice of Peace)
(Designate name, title and court)

J.P. Court No. 3